UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JAYJUIAN WATTS,

                     Plaintiff,

v.

SARAH SCHROEDER, et al.,

                     Defendants.

_____/

Case No. 2:25-cv-128

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder, Farley, Bolton, and Hares.  The Court will also

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

dismiss, for failure to state a claim, any intended Fourth and Fourteenth Amendment claims against Defendants Green, Robare, and Harris. Plaintiff's First Amendment retaliation and Eighth Amendment claims against Defendants Green, Robare, and Harris remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred there. Plaintiff sues the following MBP personnel: Warden Sarah Schroeder; Administrative Assistant Jennifer Farley; Grievance Coordinator O. Bolton; Mental Health Supervisor Unknown Hares; and Psychologists Unknown Green, Amy Robare, and Unknown Harris.

Plaintiff alleges that from October 28 until November 13, 2023, members of his family called MBP to notify the Assistant Deputy Warden and administrative assistant that Plaintiff's "mother was critically ill, and could die any day and [Plaintiff] needed to be given an emergency phone call because his mother was requesting to speak with him." (Compl., ECF No. 1, PageID.3.) Plaintiff avers that these calls were documented and transferred via voicemail to non-party Assistant Resident Unit Supervisor (ARUS) Kevin Collison. (*Id.*) According to Plaintiff, both the Assistant Deputy Warden and administrative assistant "assured the family they will allow [Plaintiff] a[n] emergency phone call to contact his mother." (*Id.*) Plaintiff's

family "highlighted [that] the matter could not wait because [Plaintiff's mother] could pass any day." (*Id.*)

According to Plaintiff, ARUS Collison was on vacation during this time, but other calls were taken by the administrative assistant. (*Id.*) Plaintiff contends that from November 12–17, 2023, he was not permitted to use JPay. (*Id.*) Instead, when Plaintiff asked to use the JPay system, staff told him, "Your family keep calling [and] getting on our nerves [so] no." (*Id.*)

Plaintiff was finally allowed to use JPay on November 17, 2023. (*Id.*, PageID.4.) Once on, Plaintiff found a letter that was dated November 13, 2023, that said that Plaintiff needed to call home because his mother had passed. (*Id.*) Immediately thereafter, Plaintiff sent multiple kites to Defendant Farley, the ARUS, all psychologists, and Defendant Schroeder asking if he could use the phone and mentioning that his family had been calling MBP about the matter. (*Id.*) Plaintiff contends that his kites went unanswered. (*Id.*)

On November 18, 2023, Plaintiff stopped Defendants Green, Robare, and Harris during unit rounds, showed them the JPay message, and asked to use the phone to call his family. (*Id.*) Defendant Green stated, "We got all your kites this morning but you kept saying you would file a grievance in [those] kites if we didn't help you get the phone[;] that's not how this works or things run here at the Quette!" (*Id.*) Plaintiff tried to stop Defendants Robare and Harris during unit rounds later in the day, but was told that they could not do anything for people who threaten to

write or write grievances.  (*Id.*)  Plaintiff contends that staff members would not allow him to use the phone, and he was denied recreation so he could not use it.  (*Id.*)

On November 19, 2023, a staff member allowed Plaintiff to use the phone to call his family.  (*Id.*, PageID.5.)  Plaintiff contends that his family "was heartbroken because they tried fruitlessly to call the facility to allow him a[n] emergency call because his mother consistently asked to speak with [Plaintiff] leading up to her death date."  (*Id.*)

According to Plaintiff, his mother was "his number one support system and a huge factor in him changing his life."  (*Id.*)  Her passing "traumatized [Plaintiff] so bad that he began having nightmares of her passing."  (*Id.*)  Plaintiff alleges that the nightmares "caused him to lose significant amounts of sleep," which then caused a mental breakdown.  (*Id.*)  Plaintiff began cutting himself, "causing "serious bodily harm."  (*Id.*)  The lack of sleep also caused Plaintiff to lose weight, which caused him to experience "various body pains."  (*Id.*)

On or about November 18, 2023, Plaintiff filed a grievance concerning the failure to allow him to call his mother.  (*Id.*)  Plaintiff also started submitting kites to mental health for help with his mental breakdown.  (*Id.*)  In each kite, Plaintiff explained the "cause and effects of his mental breakdown."  (*Id.*)  He contends that mental health staff "neglected him and ignored his mental health kites and call for help."  (*Id.*)

Plaintiff goes on to allege that Defendant Green would come by Plaintiff's cell and state, "We don't care[;] stop kiting us[;] we will get you when we are ready!  If

you [were not] threatening us with grievances maybe we would move faster!"  (*Id.*, PageID.6.)  Plaintiff responded, "What if I kill myself[;] the voices be telling me to kill myself and cut myself!"  (*Id.*)  Defendant Green replied, "You wouldn't be the first person to kill yourself[;] people kill [their selves] here all the time, we don't care if you want to take your own life[;] that's on your dumb ass!"  (*Id.*)

Plaintiff submitted kites to mental health on January 7, January 18, and January 20, 2024.  (*Id.*)  On January 30, 2024, Defendant Green called Plaintiff out for a meeting and said, "If you don't stop sending in mental health kites I'll make sure you get put into the hole (segregation)."  (*Id.*)  Plaintiff tried to explain that "all he wanted was to see a doctor to get something to sleep."  (*Id.*)  He said he had "been self-mutilating," was very depressed, and had not been sleeping.  (*Id.*)  Defendant Green responded, "You don't get to see the doctor when you want[.]  I don't care that your mother died or you can't sleep.  You need to stop sending mental health kites in[.] . . . [W]e don't need to treat you!"  (*Id.*)  Plaintiff ended the meeting and went back to his cell.  (*Id.*)  Staff members refused to give him a grievance, so Plaintiff was not able to file one until February 20, 2024.  (*Id.*)

Plaintiff claims that MBP has the highest suicide rate in the MDOC.  (*Id.*, PageID.7.)  He also contends that the "current policy of family emergency notification is so inadequate that [it has] caused [Plaintiff] irreparable psychological damage and has caused him significant bodily and mental damage due to self[-] mutilation and lack of sleep and weight loss."  (*Id.*)  Plaintiff claims that he "now consistently hear[s]

voices from his mother and it sends him into a great depression[,] causing him to starve [himself] and lose sleep." (*Id.*)

Plaintiff goes on to state that MBP "is arbitrarily rejecting grievances to thwart inmates from filing civil complaints." (*Id.*)  Plaintiff avers that Defendant Bolton rejected his February 20, 2024, grievance, "for failure to attempt to resolve before filing it." (*Id.*, PageID.8.)  Plaintiff claims that Defendant Bolton "intentionally rejected [his] grievance to thwart [him] from filing his civil complaint." (*Id.*)  He also alleges that the violations of his civil rights occurred because Defendants Schroeder and Hares failed to train their staff properly. (*Id.*)

Based upon the foregoing, Plaintiff states that he is asserting claims for violations of his First, Fourth, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.9.)  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.9–10.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment

#### 1.    Retaliation

In his complaint, Plaintiff indicates that he is seeking injunctive relief in the form of an order directing Defendants to stop retaliating against him. (Compl., ECF

No. 1, PageID.9.)   In light of that request, the Court has construed Plaintiff's complaint to assert First Amendment retaliation claims against all Defendants.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a.    Protected Conduct

Here, Plaintiff has alleged sufficient facts regarding the first element of a retaliation claim.  An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding

10

that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

### b.    Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).  Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. The Court will consider whether Plaintiff has alleged sufficient facts with respect to each named Defendant below.

### (i)    Defendants Schroeder and Bolton

Although Plaintiff contends that Defendants Schroeder and Bolton have retaliated against him, the only facts alleged with respect to Defendants Schroeder and Bolton are that they were involved in the denial of Plaintiff's grievances regarding the lack of mental health treatment after his mother's passing.

11

However, many courts, including this one, have held that the denial or refusal to process a grievance is not adverse action.  *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim).  Plaintiff's First Amendment retaliation claims against Defendants Schroeder and Bolton fail at the second step and will, therefore, be dismissed.

### (ii)    Defendant Farley

Plaintiff's complaint suggests that Defendant Farley was the administrative assistant who took calls from Plaintiff's family asking that Plaintiff be allowed an emergency phone call to call his mother before she passed but did not ensure that Plaintiff received that phone call per MDOC policy.  Plaintiff, however, offers no facts to suggest that his grievances motivated any adverse action by Defendant Farley.

Indeed, Plaintiff's complaint suggests that he filed his grievances **after** he was unable to receive his emergency phone call.  Any First Amendment retaliation claim against Defendant Farley will, therefore, be dismissed for failure to state a claim upon which relief may be granted.

### (iii)   Defendant Hares

In his complaint, Plaintiff suggests only that Defendant Hares failed to properly train his staff members.  Plaintiff, however, does not allege that Defendant Hares personally took any adverse action against Plaintiff.  Thus, Plaintiff's claim against Defendant Hares fails at the second step of the *Thaddeus-X* analysis. Plaintiff's First Amendment retaliation claim against Defendant Hares will, therefore, be dismissed.

### (iv)   Defendants Green, Robare, and Harris

Plaintiff alleges that after he threatened to write and did write grievances, Defendants Green, Robare, and Harris denied him mental health treatment, telling Plaintiff that they would not do anything for people who threatened to write grievances.  (Compl., ECF No. 1, PageID.4, 6.)  Plaintiff goes on to suggest that Defendant Green told him that he would make sure Plaintiff was sent to the hole if he kept sending mental health kites.  (*Id.*, PageID.6.)  In light of these allegations, Plaintiff's First Amendment retaliation claims against Defendants Green, Robare, and Harris will not be dismissed on initial review.

### 2.    Handling of Grievances

Plaintiff's complaint can also be construed to assert First Amendment claims against Defendants premised upon their handling of Plaintiff's grievances and kites.

However, to the extent alleged, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of his grievances or their failure to respond to his kites or complaints. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the

14

prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, any intended First Amendment claims premised upon Defendants' handling of Plaintiff's grievances and kites will be dismissed.

### B.    Fourth Amendment

Plaintiff contends that he is asserting claims pursuant to the Fourth Amendment to the United States Constitution. (Compl., ECF No. 1, PageID.9.) Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Plaintiff fails to explain, and the Court fails to discern, how the factual allegations set forth above implicate the provisions of the Fourth Amendment in any way.  Plaintiff's Fourth Amendment claims will, therefore, be dismissed.

### C.    Eighth Amendment

Plaintiff contends that his Eighth Amendment rights were violated by the denial of mental health care, as well as a failure to protect him from self-harm. (Compl., ECF No. 1, PageID.9.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*,

452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511

U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.

Under the Eighth Amendment, the unnecessary and wanton infliction of pain constitutes "deliberate indifference" to an inmate's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976).  A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer*, 511 U.S. at 835.

The Sixth Circuit has held that "[a]n inmate's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).  With respect to suicidal tendencies, the Sixth Circuit has stated:  "A plaintiff meets the objective prong of the [deliberate indifference] analysis by showing that the inmate *showed suicidal tendencies* during the period of detention or that he '*posed a strong likelihood of another suicide attempt*.'"  *Troutman*, 979 F.3d at 483 (emphasis added) (quoting *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006); *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 416 (6th Cir. 2006)).  This is because "[s]uicide is a difficult event to predict and prevent and often occurs without warning."  *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

The Sixth Circuit has concluded that steps to prevent suicide are constitutionally required only in cases where "it [i]s 'obvious that there [i]s a 'strong likelihood that [the] inmate w[ill] attempt suicide[.]'"  *Troutman*, 979 F.3d at 483 (quoting *Downard for Estate of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020)). "This is a high bar[.]"  *Downard*, 968 F.3d at 601.  Thus, the subjective component "typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm."  *Id.* (citing *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014)).  Moreover, "a prison official's duty to recognize an inmate's risk of committing suicide has a temporal component."  *Andrews v. Wayne Cnty., Mich.*, 957 F.3d 714, 722 (6th

Cir. 2020).  To be held liable, "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Linden*, 167 F. App'x at 421 (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)).

Here, Plaintiff alleges that after his mother's death, he experienced a mental breakdown, which caused him to start cutting himself.  Plaintiff also lost sleep and began constantly hearing his mother's voice.  In light of these allegations, the Court concludes that Plaintiff has alleged sufficient facts for the objective prong of his Eighth Amendment claims.  The Court, therefore, will consider whether Plaintiff has sufficiently set forth facts for the subjective prong with respect to each Defendant.

### 1.    Defendants Schroeder and Hares

Plaintiff suggests that Defendants Schroeder and Hares are liable for the violations of his Eighth Amendment rights because they failed to properly train their staff members.  (Compl., ECF No. 1, PageID.8.)

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983

liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Schroeder and Hares encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct.  Indeed, he fails to allege any facts at all about their personal knowledge of the situation or their active conduct that could be said to have led to a violation of Plaintiff's constitutional rights . While

Plaintiff suggests that Defendants Schroeder and Hares did not respond to his kites, the mere failure to act is insufficient to impose § 1983 liability.  *See Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *see also Shehee*, 199 F.3d at 300.  Because Plaintiff's Eighth Amendment claims against Defendants Schroeder and Hares are premised on nothing more than respondeat superior liability, they are properly dismissed for failure to state a claim upon which relief may be granted.

### 2.    Defendant Farley

Plaintiff's only mention of Defendant Farley is that she is the administrative assistant who took some of the calls from Plaintiff's family asking that Plaintiff be permitted an emergency phone call to call his mother before she passed away. Nowhere in Plaintiff's complaint does he set forth any facts suggesting that Defendant Farley was personally involved in denying Plaintiff mental health treatment or that she was personally aware of Plaintiff's mental breakdown and acts of self-harm and did nothing to assist.  Accordingly, any intended Eighth Amendment claim against Defendant Farley will be dismissed for failure to state a claim.

### 3.    Defendant Bolton

Plaintiff's only mention of Defendant Bolton is that he rejected Plaintiff's grievance for failing to attempt to resolve the issue before filing the grievance. (Compl., ECF No. 1, PageID.8)  As set forth above, § 1983 liability cannot be premised upon an individual's failure to act upon information contained in a grievance.  *See Shehee*, 199 F.3d at 300.  Moreover, nowhere does Plaintiff set forth any facts suggesting that Defendant Bolton was personally involved in denying Plaintiff mental health treatment or that Defendant Bolton was personally aware of Plaintiff's

mental breakdown and acts of self-harm and did nothing to assist.  Accordingly, any intended Eighth Amendment claim against Defendant Bolton will be dismissed for failure to state a claim.

### 4.    Defendants Green, Robare, and Harris

In his complaint, Plaintiff alleges that Defendants Green, Robare, and Harris, all of whom are psychologists at MBP, ignored his numerous kites asking for mental health services, ignored his complaints about his self-harm, and told him that they would not help him because he kept threatening to and actually did file grievances. Plaintiff avers further that when he told Defendant Green that voices were telling him to cut and kill himself, Defendant Green did nothing except tell Plaintiff, "You wouldn't be the first person to kill yourself[;] people kill [themselves] here all the time, we don't care if you want to take your own life that's on your dumb ass!" (Compl., ECF No. 1, PageID.6.)  Plaintiff also faults Defendant Green for threatening to have him placed in the hole if Plaintiff kept sending kites, and that he did not care that Plaintiff's mother died and that Plaintiff was experiencing mental trouble (*Id.*) Although Plaintiff has not proven deliberate indifference, taking his allegations in the light most favorable to him, as the Court must do at this time, Plaintiff's Eighth Amendment claims against Defendants Green, Robare, and Harris will not be dismissed on initial review.

### D.    Fourteenth Amendment

### 1.    Equal Protection

In the section where he sets forth his legal claims, Plaintiff references "discrimination." (Compl., ECF No. 1, PageID.9.)  The Court has construed Plaintiff's

reference to "discrimination" to assert claims under the Fourteenth Amendment's Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  Further, "[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects."  *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).  Here, Plaintiff alleges in a conclusory manner that he was discriminated against, but he fails to allege any facts suggesting that he was treated differently than any other individuals.  Plaintiff's conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Furthermore, even viewing Plaintiff's equal protection claims as class-of-one claims, the Court reaches the same conclusion because Plaintiff's equal protection

claims are wholly conclusory, and he has alleged no *facts* that plausibly suggest that his equal protection rights were violated.

Accordingly, for the reasons set forth above, any intended Fourteenth Amendment equal protection claims will be dismissed.

### 2. Due Process

#### a. Grievances

Plaintiff references "due process" and that he did not have "access to an adequate grievance system." (Compl., ECF No. 1, PageID.9.)  First, with respect to Plaintiff's claims regarding the grievance system, the courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Accordingly, because Plaintiff has no liberty interest in an administrative grievance process, any rejection of Plaintiff's grievances by Defendants did not deprive Plaintiff of due process.

### b.    Violation of Policy Regarding Emergency Phone Calls

Plaintiff also mentions "due process" in connection with a "right to be notified of family death and emergency." (Compl., ECF No. 1, PageID.9.)  In his complaint, Plaintiff suggests that Defendant Schroeder indicated, in response to his grievance, that MDOC policy was not followed when Plaintiff did not receive his emergency phone call home. (*Id.*, PageID.8.)  As set forth *supra*, Plaintiff alleges that the administrative assistant, Defendant Farley, is the one who took many of the calls from Plaintiff's family. The Court, therefore, has construed Plaintiff to be asserting a Fourteenth Amendment due process claim premised upon Defendant Farley's failure to follow MDOC policy regarding the provision of emergency telephone calls to inmates.

Claims under § 1983, however, can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Therefore, Plaintiff's assertion that Defendant Farley violated MDOC policy regarding emergency phone calls fails to state a claim under § 1983.

Moreover, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  Courts have routinely recognized that a prisoner does not enjoy any

federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001).  Thus, Plaintiff's allegation that Defendant Farley violated MDOC policy fails to raise a cognizable § 1983 claim, and this claim will be dismissed.

<u>**Conclusion**</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Defendants Schroeder, Farley, Bolton, and Hares will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, any intended Fourth and Fourteenth Amendment claims against Defendants Green, Robare, and Harris. Plaintiff's First Amendment retaliation and Eighth Amendment claims against Defendants Green, Robare, and Harris remain in the case.

An order consistent with this opinion will be entered.

Dated:  June 26, 2025                           /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge

26